**BANK OF COMMERCE v. HARTFORD ACCIDENT & INDEMNITY CO. et al.**

**No. 12060.**

Circuit Court of Appeals, Fifth Circuit.

Nov. 7, 1947.

W. W. Dykes, S. H. Dykes, and Wingate Dykes, all of Americus, Ga., and Bentley H. Chappell and Samuel E. Kelly, Jr., both of Columbus, Ga., for appellant.

Elliott Goldstein and B. D. Murphy, both of Atlanta, Ga., R. R. Jones, of Dawson, Ga., and Hyliard B. Williams, of Americus, Ga., for appellees.

Before SIBLEY, HOLMES, and LEE, Circuit Judges.

HOLMES, Circuit Judge.

This is an action for damages for a loss alleged to have resulted directly from the fraudulent conversion of designated quantities of oats, corn, peanuts, and other commodities in the custody of one Richard Frazier. It was brought by appellant, the Bank of Commerce, as obligee in a fidelity bond, against the appellee, the Hartford Accident & Indemnity Company, the obligor in said bond. On motion of the latter in the court below, the principal in the fidelity

bond, Richard Frazier, was made a third party defendant, who would be liable to the Indemnity Company if the latter should be held liable to the original plaintiff, the Bank of Commerce.

After an extended trial on the merits, the district court gave a directed verdict for the defendant. Such verdict being rendered, judgment was entered thereon, and this appeal followed. The question presented on this appeal is whether there was sufficient evidence to require the court below to submit the case to the jury. This depends upon whether there was substantial evidence to support a verdict for the plaintiff; and, in the last analysis, this question comes down to the alleged fraudulent intent of the custodian. If the evidence was sufficient to warrant a finding of such fraudulent intent, the issue should have been left to the jury; otherwise, it should not. There was evidence to warrant the jury in finding the following facts:

The Farmers Exchange, Inc., of Dawson, Georgia, managed and largely owned by J. W. Duskin, was engaged in the purchase and sale of oats, cotton, corn, peanuts, and other farm commodities. Prior to the year 1944, said Exchange had done some of its business with the Bank of Commerce of Americus, Georgia. Beginning in the season of 1944, in order to increase its line of credit with the bank and because the bank required such method of security, the Exchange made an agreement with the Bank of Commerce wherein Richard Frazier was to become the bonded custodian of the farm commodities purchased and warehoused by the Exchange, and was to issue warehouse receipts for such commodities as were to be pledged to the bank for money borrowed or to be borrowed by said Exchange from said bank.

This agreement between the parties to this litigation is evidenced by the bond sued on, the receipts signed by Frazier, and the notes of the Exchange in favor of the bank. Each note recited that there had been deposited as general collateral security for its payment certain receipts for a specified quantity of a described commodity, at a named location. Each of the receipts was signed by Farmers Exchange, Incorporated,

by Richard Frazier, Custodian, and stated that the commodities described therein were to be delivered by the custodian only upon surrender of said receipt properly indorsed. The bond in suit recited that Frazier should act as custodian aforesaid, that Frazier had agreed to accept such duties, and that the obligation of the bond protected the bank and the Farmers Exchange against any direct loss from fraudulent conversion on the part of Frazier as custodian and as principal in the bond.

The evidence showed that Frazier's remuneration was on the basis of the volume of the commodities stored, and was paid by the Exchange; that the warehouses used in storing the commodities were either owned by or leased by the Exchange; that Frazier lived on his farm, and continued to farm, and visited the warehouses at intervals of from two days to several weeks. He kept no records of the goods entrusted to him, but he admitted that all of the commodities covered by his receipts were in the warehouses at the time he issued the receipts thereon. During the entire period, Frazier permitted the Exchange to ship and move the commodities at will, and he never required the surrender of one of his receipts before delivery. The only check-up he made on such shipments and the resulting shortages was from the stock records of the Exchange. On such occasions, Frazier would get a check from the Exchange, take it to the Bank of Commerce, and would take up the warehouse receipts for the commodities covered in the shipments, but at no time did he disclose to the bank that the stored commodities had been shipped prior to such payment. In January, 1946, when Frazier checked the commodities in his custody with the records of the Exchange, he found a shortage in commodities of the value of $14,000. Duskin being absent from the state at the time, Duskin's bookkeeper gave Frazier a check on a bank account where there were insufficient funds to pay the check. Frazier held the check for several days until Duskin's return, and did not report the shortage to the bank.

In early May, 1946, Frazier discovered that the warehouses had been practically emptied except for about 30 tons of pea-

nuts, and that there was a shortage of about $49,000 in commodities. He called on the Exchange for payment of this large shortage. A check was given him, and he delivered it personally to the Bank of Commerce and took up the covering warehouse receipts issued by him on the commodities; but still he did not disclose to the officers of the bank this shortage or his wrongful methods of performing his trust. This $49,000 check was dishonored because of stop-orders placed on checks previously deposited in its bank account by the Exchange, and then the bank obtained knowledge of the fact that the commodities which were held in trust had been permitted by Frazier, the trustee, to be sold, the warehouse receipts for which were held by the bank as security for money loaned thereon to the Exchange.

Never in one instance did Frazier require the surrender of his receipts as custodian before delivery of the commodities that he held in trust. He failed to keep any records of his own, and relied solely on the records of the Farmers Exchange, as a means of determining shortages in the commodities entrusted to him. He failed to disclose to the bank that he permitted and sanctioned the delivery to purchasers of goods in his custody without requiring the surrender of the warehouse receipts, which were symbolic of the property.[1] It was not necessary that Frazier should have fraudulently converted any commodities to his own use in order to render him and his surety liable on the bond. If he knowingly or intentionally aided, abetted, assisted, or permitted others to convert the same to their own use, or countenanced the doing thereof by others, the issue as to his fraudulent intent was for the jury.

There was ample evidence in the court below to warrant the submission of the case to the jury. A custodian is one entrusted with the care and possession of a thing. In the instant case, Frazier had the custody of specifically described farm commodities. Each of his receipts stated that the commodities should be deliverable at the warehouse to the order of the Bank of Commerce "upon surrender of this receipt," properly indorsed. In violation of his plain duty, he repeatedly, systematically, and over a long period of time, violated this duty. Whether this was fraudulently done was peculiarly a question for the jury.

The judgment appealed from is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

---

[1] Code of Georgia Annotated, § 12-601. "A pledge, or pawn, is property deposited with another as security for the payment of a debt. Delivery of the property is essential to this bailment, but promissory notes and evidences of debt, warehouse receipts, elevator receipts, bills of lading, or other commercial paper symbolic of property may be delivered in pledge. The delivery of title deeds creates no pledge. (Acts 1887, p. 36.)"